And the issue on behalf of this particular appeal is the qualified immunity. I'd like to also mention to the Court, however, at least on the periphery, I was a co-counsel in what I would call a trilogy of cases. The one that you just had an oral argument on, Pikett was a part of at one point. He's no longer a member of that case. After that came Curtis v. Anthony, and thirdly is this particular case. Now, in all three of those cases, the same plaintiff… JUSTICE KENNEDY Curtis v. Anthony is a completely separate case that does not involve the specific facts of this case and involves nothing other than your client and his expertise as a dog sniffer. Yes, Your Honor, but the reason I believe it's important is they had the same plaintiff's counsel in all three cases with the same experts in all three cases… Okay. …concerning attacking my client regarding the dog scent issues. And on behalf of my client, who's now retired, irregardless of what one may say of the dog scent issues, in this particular case… Let me ask you. Is that a practice that is widely used in the State of Texas? It had been, Your Honor, up until around the year 2011. It had been discredited, but even the Texas Court of Criminal Appeals did not say it was junk science. In the reversing, Megan Winfrey had said it's only supportive. And the reason it's supportive, for instance, in this particular case, if Megan Winfrey had never known Mr. Burr, who was murdered, then it would have been an issue because why was your scent found on him? But in this particular case, my client in his affidavit said, you know, if I had known any of the facts, which he didn't, he would have said this is a useless exercise because they knew each other. If they knew each other, there's no reason to even have a dog scent trail. Do you concede that Winfrey 1 and Good v. Curtis clearly established that it's unconstitutional to deliberately create a scientifically inaccurate lineup report? Pardon? I didn't understand that. Do you concede that Winfrey 1 and, if not Winfrey 1, Good v. Curtis clearly established that it is unconstitutional to deliberately create a scientifically inaccurate lineup report? No, Your Honor. I think specifically what Curtis stated in reviewing the evidence, they looked at the dog, the dog expert, and that court specifically said even if Pikett did manipulate or misrepresent his results, which is uncertain, appellants were not incrementally harmed. They could have been arrested, charged, and indicted regardless. That's not an answer to the question about whether it's — that's about the harm to those particular people, but that's not an issue of whether it's a clearly established law that you can't do this. And that was the question. So can you answer that question, please, sir? I don't think it's clearly established that what Pikett did — That you can't create a scientifically inaccurate lineup report, that that's against the — There's several things, several layers, and the clearly established part is the part I'm talking about. And we're talking about disputed issue of fact as well. But as to the clearly established, it has never been clearly established that it was junk science. They looked — in Curtis, they looked at the experts that they had against Pikett, and they looked at the tape, and they said it was uncertain. And that's why he was granted qualified immunity. If it were scientifically inaccurate, would it be against constitutional law to create a test that was designed to assist a prosecution in a — with a scientific inaccurate test? If you intentionally did that and it was proven to be, yes, it would be. Or a disputed issue of fact. And that's the question, I think, that we have here. But what we have in Curtis — this case is right on point with Curtis because it's the exact same evidence. It's looking at him doing — my client, Pikett, doing the scent lineups. They're experts saying, well, he's basically trying to go into his mind saying you're cueing the dog. And the Court said it doesn't matter because based on the evidence, you still would have been indicted and convicted. And in this case, under Megan Winfrey, she still would have been indicted. Let's look at the timeframe. I think it's very important in this case because I was going to mention before that I was involved in all three of these to a lesser extent the other two. But the dog scent lineup was started in August — his only involvement was August 24th of 2004. And Megan was indicted and arrested on March 27th of 2007, two years and seven months later. My client did this dog because the Rangers asked him to do it. He did it. Two years and seven months go by, and he had no further participation with regard to Megan Winfrey. So she suffered no injury as a result. She suffered no injury because if you take him out of it, she still would have been indicted. This whole thing really rose because of the confidential informant. That's what sprang everything up, Mr. Campbell. You have a constitutional claim. You've got to have some injury, right? You have to have an injury, yes. But if you carve — You're saying that there is no injury. She suffered no injury as a result of this particular — Yes, Your Honor. She did not suffer an injury because of what my client did on the dog scent lineup. In fact, it's a proven fact because she testified that she knew — she not only knew him, but two weeks to a month prior, she had been and seen him at his house. I don't understand that argument at all, and it's throughout your brief. The fact that Winfrey had been at Burr's house weeks before the murder was not an admitted fact at the time of the scent lineup, I don't believe. And that's the relevant timeframe. Not whether by the time of trial it was known that she had been there. Well, Winfrey — I mean, my client didn't know anything about this case, period. Right, and she didn't. But the fact that later on at trial it was established that she had been at the house, that doesn't clear your client. Well, it proves that the dog scent was accurate because that's all he's saying, that there was some scent — But there's already a fact issue on whether or not it was led and coached. Why isn't there a fact issue on whether it was coached? Because Curtis v. Anthony is exactly the same evidence, exactly the same evidence with the same experts, and you had a video. In this case, you also had the actual video. I guess we can ask Ms. Wang about this, but exactly what happened to the defendant as a result of this dog sniffing? I mean, was she arrested? Was she punished in any way? Was she damaged? Was it broadcast in the community? No, Your Honor. Does she claim any injury as a result of the dog sniffing? No, Your Honor. I would argue she was not. I'm not asking what you would argue. I know you wouldn't argue that. But what are the facts? Did she or did she not? I mean, did she allege any injury? No, Your Honor. It wasn't until this confidential informant came up that the investigation all of a sudden ratcheted up, and then you had the court of appeals opinion, which is interesting. There's a Texas court of criminal appeals, which is like a Supreme Court of the criminal side. We have a dual system in Texas. And before it got to that, the court of appeals looked at this case from a sufficiency of the evidence standpoint, and it said, okay, the dog scent evidence is supportive, but it can never be based on a conviction, so we're going to etch that out. We're not going to consider it. And we're going to consider all the other evidence. That evidence was introduced in court, I guess. I don't remember now. Yes, but what's interesting is the court of appeals carved that out and looked at all the other evidence against Megan Winfrey and held that beyond a reasonable doubt there was enough to convict her. Now, the Supreme Court disagreed, and that really goes to my argument I clearly established law. Well, I'm trying to figure this out. In other words, what we are claiming here now, and there's more questions from violation that her conviction resulted from this dog sniffing. That's what it is. So many facts in this case that keep coming to me after. The Texas Court of Criminal Appeals pointed out six very specific instances of what, beside the dog incident, the dog scent evidence, why there was enough, although they ultimately held it was not enough for beyond a reasonable doubt, it was enough for probable cause. But they are alleging, I mean, the plaintiffs are alleging with respect to the dog sniffing that, well, I mean, what is the lady's name? Megan Winfrey. Megan. Megan alleged that the court of appeals said that the dog sniffing was the major piece of evidence that convicted Megan. Is that correct? No. If you look at the court of appeals opinion, they specifically carved it out, looked at all the other evidence outside of the dog sniffing evidence and said there is enough evidence beyond a reasonable doubt and affirmed the conviction. It wasn't until the court of criminal appeals looked at it. But that doesn't tell you whether it supported the jury's decision to, the fact that you can carve it out and still get enough on doing a sufficiency analysis doesn't tell you that it wasn't a factor in the conviction. But it would say that without it, you still would have had the conviction. And that's all I'm saying is in Curtis v. Anthony. They said you could. Well, you're trying to say it's causation. And that's a matter for the jury in that. And we don't even have jurisdiction on causation because the issue is whether or not there's a material. We can only determine if there's a fact issue on the, on whether or not he manipulated the dogs. But as to the dogs, it's not, it's from a sufficiency of the evidence standpoint, it's not determinative. As this court held in Curtis, it said it was not, the plaintiff, the appellants were not incrementally harmed. In that case, you had two incidences of a felony, aggravated burglary, and you had a murder conviction. And both were combined in one cause of action against Pikett and the city of Houston Police Department. And in that case, specific with regard to my client, Mr. Pikett, they looked at the video, they looked at the contravening evidence with the affidavit, and they said, look, regardless of Pikett's testimony, you had A, B, and C factors. And Pikett's scent trails were not incrementally, did not incrementally harm the plaintiff, and he was awarded qualified immunity. That is squarely on point with what we have here. And that was a cited case, Curtis v. Anthony, which is 710 Fed Third 587, Fifth Circuit, 2013. I would also like to point out before I forget that I did find in researching and preparing for oral argument a recent case from this court at the end of June of 2017, which is very analogous to this case, and it's Brewer, B-R-E-W-E-R v. Hain, H-Y-N-E, at 860 Fed Third. Did you give this to opposing counsel before argument today? No, Your Honor. I was just citing it in the record, because I just found it. Well, you were here this morning, and you just were given a new case right now? Is that right? That's correct, Your Honor. Go ahead. It goes to an expert regarding odontology. Well, we're just, if Ms. Hain wishes to respond to it. I can give her the case right now. Well, you can do that. You can do that as well. But she has an opportunity to respond in writing to anything that you may say. Yes, Your Honor. You can give her that case now if you can. Yes, Your Honor. But anyway, tell us about it. It had to do with experts on odontology regarding bite marks on a murder case where individuals were convicted, the convictions were subsequently overturned, and they were sued based on their testifying as to these bite marks, which were somewhat determined to be questionable, this type of the bite marks. And that case, the Fifth Circuit, on June 27th of this year, held that they were entitled to qualified immunity as expert witnesses. So, as I understand your argument, Mr. Fischerio, is that with regard to the dog scent lineup itself, your client didn't know it was junk science at the time he conducted this, so he gets qualified immunity on that. But then we got the cue up, the argument that he intentionally cued the dogs. And so the trial court denied qualified immunity on that aspect of it. Why do you win here on that? Because it's exactly the same as Curtis v. Anthony. That's exactly what they allege there, that he intentionally cued the dogs. And I don't know how you can, just because they're experts. Well, what did Curtis v. Anthony, what did it? Curtis v. Anthony, which is a Fifth Circuit case, 2013, against Pikett and the City of Houston Police Department. I know. But what did it say about, which I assume is broadly stated, a deliberate misleading lineup? It said that even if he did misrepresent or even if it was, the appellants were not incrementally harmed. Okay. That is those appellants. That's that case. Yes. So, I mean, it's assuming, it just said if it is a constitutional violation, it's harmless. Because of the other factors. So it didn't decide that it was. In that case, it didn't decide it was. So you're saying it was harmless here. That's your argument? Yes. If you carve out the scent lineup, again, as they did in Curtis v. Anthony, it's still harmless. It was in that case. Yes. And I argue that it is in this case. Why is it harmless here? You argue it, but it's not. Because of all the factors giving, which the Court of Appeals had held enough for even a guilty verdict to be If all those factors, and the Court of Appeals opinion is very specific in all these factors, mainly if you have this confidential informant who comes out of prison, was in prison with Richard Sr., the father, and gives all this information, that's what spurred this investigation in the beginning. And then Megan's own issues, as soon as she found out there was a hair trace found, she went and shaved herself, and they had a hard time getting them to give a subpoena for that. She went to her boyfriend, tried to come up with an alibi, and the boyfriend that she was currently with at the time the trial came out, that she was with during the time of this murder in 2004, came all the way from Iowa to testify against her. Did you argue all of this before the district court, or did you only argue that they already knew that she was in the house, or that the fact that she was there for two weeks prior doesn't tell us anything we didn't know? Is that the argument you made to the district court? Well, in the summary judgment, it's a very all-inclusive argument, but the main issue that I think that was raised was the fact that the dog sent evidence proved a known fact because of the fact that she was there. It proved out that he wasn't fabricating, in my opinion. He wasn't fabricating. The dogs were accurate. But it wasn't known at the time that he did the dog scent test, and that's the issue. It was an impetus to go and do these other things. But it wasn't an impetus because nothing really happened until two years after the scent. It wasn't until the confidential informant came through and then all these other things started dominoing. When did she start shaving herself? When she found out that there was hair found in the body. When did she find that? I believe that occurred in 2005. And that had nothing to do with the dog scent? No.  Thank you, Your Honor. We've saved some time for rebuttal. Mr. Frigere, Ms. Wang. Your Honor, let me start with some of the questions that you raised to Mr. Frigere. So first, Judge Daly, you had a question about what happened to Megan as a result of the dog sniffs. Well, I mean, my mind clicked in later than I realized. But go ahead. You can say it.  She was found dead. She was found dead. She was found dead. She was arrested as a result of the dog sniff. Let's recall that Defendant Johnson had said in a previous arrest... That was the basis of her arrest, actually? Well, but he said it was the drop trial and Campbell. So he said it was the drop trial and Campbell combined created enough probable cause for him that he believed he should go get the warrants. But secondly, she was convicted. So this is the factual way in which this case differs from Ritchie's case. The testimony, the dog sniffing was all in the record at her trial of conviction. Pike had testified at trial, yes. And what he testified to at trial was that the scent from the scent lineups established that she was there. He claims now that this only established something that Megan herself testified to, but that's not supported by the record. Megan testified at her own trial. How old was Megan when the alleged murder occurred? She was 16. She was 16 and Ritchie was 17 in 2004. What are the facts in the record regarding her presence in the Burr residence? What she testified to at trial was that she would occasionally visit Murray Burr and ask him... And that she sat in the furniture there at the residence. She did say that she sat in the furniture, but her testimony at trial did not establish a time frame for that. No, I understand that. But then the argument that Mr. Fergerio raises is, you know, so they did a dog sniff and all it did was prove up that she was in the house, and she herself admits she was in the house. So, I mean, how was she harmed by the sniff? She was harmed because what he was trying to claim at trial was that the scent established direct contact between Megan and Burr on the day that he died. But she admitted. She didn't admit having direct contact with him. On the day she died. Right. But otherwise she did. But her testimony didn't establish a time frame. And when she did testify, she... Well, let's backtrack here. Yes. So with regard to the statement that it was the dog trail and the jailhouse snitch that led to getting, procuring the arrest warrant, I mean, at that point in time, all we know is that she had visited the house previously, correct? Right. And then the dog sniff established that. The argument about that she was in the residence at the day of the murder, I mean, is that what they relied upon to get to the search warrant? Or was it just the fact that she had previously visited the home? Oh, okay. So there was nothing in the search warrant about whether the Winfrey's ever visited Murray Burr. But the way he was characterized in the search warrant affidavit is that the scent lineups established direct contact with Murray Burr on the day that he died. Because what the dog sniffed was Murray Burr's clothes from the day that he died, you know, the clothes he was wearing when he was found. And then it went through this lineup where the dogs were sniffing Megan and Richie's scents. So for the arrest warrants, Pikett's evidence, fabricated evidence, was used to try to establish direct contact between the Winfrey's and Murray Burr on the day that he died. He is now contesting that that is, in fact, what his evidence was used to do, but his own testimony at trial shows that he tried very hard to bolster the prosecution's case by saying that there had to have been pretty close contact. He can deny that now, but this is a dispute of fact, which this Court has no justice to. Well, I mean, what did he say? You say that he did everything to suggest that. Did he beat around the bush? Did he say it or did he not? Here's what he said. At ROA 3690, he's asked by the prosecution, and in your opinion and experience, these dogs alerted to Megan Winfrey's scent. Is that correct? Yes. And they alerted to Richard Winfrey, Jr.'s scent? Yes. And Richard Winfrey, Sr.'s scent? Correct. And in short, what that tells us is that they had contact with the clothing. Yes. Their scent was on the clothing, correct? Correct. I mean, that's what he said. And then on cross-examination, Winfrey's counsel did try to, you know, show that there was a less direct contact, but he repeatedly was dismissive of that. And there's places that we directly quote in our brief where he says, you know, that it would have had to have been very recent contact, and he was dismissive of the idea that there could have been scent transfer. So, you know, at this point in this litigation, he's trying to say that his testimony had no effect on Megan Winfrey's conviction, but a reasonable jury could certainly find that it did. I'm sorry, go ahead. So the testimony before tried to place it right at the time of the incident and said, oh, anything farther. And now they're trying to say, oh, well, it's really about two weeks ago. And so it wasn't really trying to place him near the time of the incident. I guess that's sort of a friendly question. Am I correct that that's what the testimony is? Right. And so he is trying to push the jury to believe that she was in the place at the temporal time of the death, which is very important. Right. What about the argument we're hearing that, okay, now we realize that this is pseudo-junk science if not actual junk science, but at the time I did this lineup back in 2004, I didn't know it was junk science and I didn't create junk science knowingly. Why doesn't that give him qualified immunity? That's not the claim. The claim here now, of course, they want to say, oh, we didn't know. The claim here is that Pikett fabricated the alerts. And this was discussed in the prior appeal and it's discussed in our expert report, which the district court accepted. By the idea it did not, at least it's a disputed issue of fact. Right. Right. That's all you've got to show. So your claim is not that dog scent is bad and he shouldn't have used that. It's that he maneuvered the dogs to get a particular result. Correct. That he jerked on the leash, he looked in the cans, the scents of, you know, the container that had the scents of, not the container, but the bag. The scent pads were in a bag and they were in a paint can. That the scents of the suspects, Richie and Megan, looked different than the filler scents, that he knew his dogs were used to the filler scents. All of these things that are discussed in the district court opinion about our expert reports. They're competing facts, which this court does not have jurisdiction over. All right. Now, what do you say about this intervening case, what's the name of it? Yes. Brewer. So I looked at that case, the Brewer case. No, no. Curtis. Curtis. He says Curtis says he wins. So does that, is that true? No. Curtis has a video, apparently, in which it's demonstrated what happened in that case, I suppose, that was not available in the cases, in the case before us. And there was testimony that that is exactly what happened in this case. And the case was videoed is the one in which the procedure was upheld. Okay. So in Curtis v. Anthony, what this Court said about Pikett's lineup, and it looked at the video, is a jury could believe that he cued the dogs or it could believe that he didn't cue the dogs. But regardless, looking at all the other facts, and there were a lot of other facts in that case that are totally different from these facts, there was probable cause. And so the plaintiff loses. So it's just totally distinguishable. And I believe that the video is in the record in this case. But you can look at the video yourself. Not the video in this case. The video in this case? There was no video in this case. There was a video in this case. There was a video in this case as well. Yes. Okay. Yes. That Pikett's lineups were videoed. And I do believe that it is in the record. But the videos don't tell you whether he's jerking or not, definitively. Definitively, right. So it's not like one of those Scott v. Harris Supreme Court cases for qualified immunity that you say, it tells you the answer, we don't have to have a fact issue. This doesn't tell you the answer of whether he's sabotaging the process or not. Correct. In our view, both our expert report of Stephen Nicely and the video together, I mean, you can look at it yourselves. They sure seem to show Pikett cueing the dogs or, you know, doing things to cue the dogs. And it's a question of fact, which this Court doesn't have jurisdiction to consider. Okay. You need to address in some more detail his argument that, well, there's lots of other reasons for probable cause here, just as it was in Curtis. You said that Curtis is different and there were more facts there, but he says there's as many facts here as there were there and that we should do the same thing that was done in Curtis. I don't think you've addressed that in any detail. So with respect to probable cause, and, again, this goes to Megan's Fourth Amendment claim. She's got other claims, Fourteenth Amendment claims, because she was convicted as a result of Pikett's testimony. So with respect to the probable cause question for the Fourth Amendment, the warrant, you have it in the record, Megan's arrest warrant. And the stuff in the arrest warrant was basically that, you know, you had Campbell's statements, which we know had inconsistencies in it, which were not put into the warrant, and there was this stuff from her teachers saying that she, you know, had some interaction with Murray Bird that seemed kind of questionable, and there was the drop trail and the scent lineups. And so the drop trail and the scent lineups really establish the, you know, the probable cause in the arrest warrant affidavit. You know, for the same reasons that we urged in Ritchie's case, there was no probable cause with respect to the warrant without the falsehoods. Opposing counsel says that, well, we don't just have — he's not just protesting the Fourth Amendment, but he's also doing the due process case, the Fourteenth Amendment claim. And he says, well, the fact that they didn't use it to analyze whether or not the conviction should be upheld, that that shows that there was other evidence, significant evidence in the record, and therefore there's a lack of causation here. They did use it. And what the Texas Court of Criminal Appeals looked at is it said, you know, when inculpatory evidence is obtained from a dog scent lineup, its role in the courtroom is merely supportive. So when you get, you know, there's the stuff that was in the warrant at the time of arrest, and then there's what was presented at trial, at Megan's trial. And what you had at Megan's trial was Pikett testifying about the scent lineups. You had David Campbell testifying. And by the way, David Campbell's testimony at the trial was that everything he heard from Richard Winfrey Sr. was hearsay, that he had nothing on Megan Winfrey. He had never had any conversation with her. And he was stepping back from what he had, you know, what apparently Johnson had thought that he had said or had indicated that he had said. And, in fact, he even said, Campbell testified at Megan's trial, not only that it was hearsay, but that everything was staged, that Johnson tried to get him to say stuff that wasn't true, that he tried to manipulate his statement. So that was the testimony at trial. And so when it comes down to what led to Megan Winfrey's conviction, Pikett's scent lineups were extremely important. And although it wasn't discussed in this particular opinion, in Richard Winfrey Sr.'s trial, if you look at the Texas Court of Criminal Appeals decision in his case, and in his case it was very similar evidence, it was the same people who testified, Pikett, Campbell, Jason King, the jury in the father's case came back with a question during deliberations saying, can we convict solely based on the dog sniffs? Now, I mean, that was in his trial, not in Megan's, but it's indicative of the fact that Pikett's testimony was key to Megan's conviction. What did the question, how was it answered? How was it answered, the question? Oh, in that case, the judge just said, follow the instructions. And then, you know, the Texas Court of Criminal Appeals reversed, because it found that that's what basically the basis of the conviction, and you can't have a conviction based solely on that. Okay. Thank you very much. We have a little time for rebuttal here. Thank you, Your Honors. I'd like to go over those six factors that both the Court of Appeals opinion and the Texas Supreme Court wrote about in their opinion. One was that Winfrey believed that Burr, the murder victim, had money and she wanted it. Number two, Winfrey's father, who was a jail cellmate with Campbell, who turned out to be the confidential informant about the murder, gave specific facts about the multiple stabbing and gruesomeness of the murder and that guns had been taken as a result of the murder. Now, the law enforcement officers didn't even know that there was guns when they started investigating the case. When they asked family members, they found out that that was true, that there had been guns stolen as a result of the murder. Three, when Morgan, when Megan learned that her brother had been arrested, she asked her current boyfriend, Jason King, to take her to her ex-husband's house, Chris Hammond. How old was she, 16? Yes. Take her to her ex-husband's house? Yes, Your Honor. She's moving fast. To discuss an alibi, and that was directly by Jason King. After Chris Hammond was subpoenaed, that's the ex-husband, Megan called his mother to find out what he was going to testify to. Five, when Megan learned that pubic hair had been found at the crime scene, she shaved off her pubic hair to prevent a sample being taken. And six, Megan told her boyfriend, Jason King, that she went to Burr's house because he was an easy lick. Those are the six enumerated factors in the Court of Appeals' opinion. And they said, the first, the Court of Appeals said that was sufficient to convict beyond a reasonable doubt. The Texas Court of Criminal Appeals acknowledged these six factors, but they said after carving out the other evidence, which can only be supportive, that it was not enough for a conviction beyond a reasonable doubt. In that specific regard, we have two courts of appeals with differing opinions, and I would argue that that is an established law issue under the qualified immunity defense. They could not even agree as to the necessity of this evidence, but yet that was beyond a reasonable doubt. And all I need for my defense is probable cause, number one. And two, I believe that Curtis v. Anthony is dispositive of this case, Your Honors, because we're dealing with a videotape. This case has a videotape. Curtis Anthony had a videotape. I don't understand how that gets you anywhere. The videotape doesn't help your client. It's not conclusive, and in fact, the other side thinks it's better for their case. So I don't understand what the videotape, how that destroys the fact issue in this case. Because Curtis, he was granted qualified immunity, and I assert he's entitled to qualified immunity in this case as well because of him. Right, but why would he be entitled to qualified immunity just because of the existence of a videotape? Not just the existence, but adding the factors. As this Court held, even if Pikett did manipulate or misrepresent the results, which is uncertain, appellants were not incrementally harmed. They could have been arrested, charged, and indicted regardless. In this case, Megan Winfrey could have been charged, indicted, and tried regardless of the sent lineup. But that has nothing to do with the videotape. That's not the videotape. Well, the videotape is what the whole issue is about with regard to my client, what happened at the dissent panel. Right, but it's not dispositive. It doesn't answer the question. It says even if. But even if, it still does not show. It's harmless. That's all it said. But it doesn't. It's harmless. And in fact, it's the same as saying we will assume for the purposes of this opinion that the dog sent was unconstitutional, but it was harmless. And if you carve out the video, if you carve out, forget the video, if you carve out what occurred on the dog sent lineup, you still have probable cause. One Court held you had beyond a reasonable doubt, and the other one said you didn't. But I think that entitles my client to qualified immunity because there was no constitutional violation. And I ask you to reverse the trial court and affirm my client's entitlement to qualified immunity. Thank you. Thank you. That completes the arguments that we have on the oral argument calendar for today.